

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Olan R. Van Zandt, Chairman
Joint Legislative Advisory Committee
Austin, Texas

Dear Sir;

> Opinion No. 0-1946
> Re: H. B. 933, Acts, 46th Legisla-
> ture -- Equalization fund --
> Application for aid -- Budget
> -- Ineligible district.

We beg to acknowledge receipt of your letter of February 6, 1940, touching the construction of H. B. No. 933, passed by the regular session of the 46th Legislature, saying:

> "In formulating rules and regulations authorized in said Act and approved by said committee it was ordered that transfers from ineligible districts as defined in Section 6 thereof, should not be counted on the teacher-pupil load of the receiving district and in addition thereto receiving districts were permitted by said committee to eliminate from their budgets the per capita received from such ineligible transfers and such per capita so received should not be computed as a part of such applicant's receipts or revenues", and propounding the question;

> "Did said committee exceed its authority in authorizing receiving districts not to compute revenues received from transfers coming from ineligible districts in applications provided in said Section 13?"

The State Superintendent and your committee were quite right in the ruling that transfers from ineligible districts, as defined in Section 6 of the bill, should not be counted on the teacher-pupil load of the receiving district.

This is the plain meaning of Section 4 of the Act, which declares:

"The basis for calculation shall be the net scholastic enumeration of white or colored race, as the case may be, including the transfers into the district and excluding the transfers out of the district, provided such transfers are from the districts eligible to receive aid under Section 6 of this Act for the current year."

The answer to your inquiry whether or not the rule adopted was in excess of authority in directing receiving districts not to compute revenues received from transfers coming from ineligible districts in their applications for aid under Section 13, is not so easily answered.

Section 13 of the Act reads:

"The trustees of the schools authorized to apply for Aid under the provisions of this Act shall send to the State Superintendent of Public Instruction on forms provided by said authority a list of the teachers employed in the schools showing the monthly salary, experience, and training of each, together with an itemized statement of budgeted receipts and expenditures, the length of term and such other information as may be required, and the State Superintendent, under the direction of the Joint Legislative Advisory Committee may, subject to the provisions of this Act, grant to the school such an amount of this fund as will, with the State and County available funds, together with the local funds, maintain the school * * *. Provided, also, that all aid granted out of the funds herein provided shall be allotted only on the basis of need, based upon a proper budgeting of each district asking for any form of aid. The application shall be sworn to by the County Superintendent, president and secretary of the board of trustees of each of the schools applying

for aid. All aid granted out of the
funds provided shall be allotted only
on the basis of need based upon an
approved budget of each district ask-
ing for any form of aid, except as
otherwise provided in this Act. * * *"

It is clear the language of this Section "an
itemized statement of budgeted receipts and expenditures,"
is broad enough to include the item of per capita in-
quired about. This is the literal and natural interpre-
tation of the Section in the absence of something some-
where in the Act to show a different meaning.

We find nothing in the Act that would require
or even permit the omission of the item of receipts for
per capita transferred pupils and we are not therefore
at liberty to disregard the plain requirement of Section
13.

If this construction works a hardship upon the
school receiving such ineligible transfers, such result
does not justify a disregard of the statute. The wisdom
of the statute is for the Legislature. Besides, other
provisions of the Act may take care of such situation.
We refer especially to that provision contained in Sec-
tion 4 "that where unusual or extraordinary conditions
cause an actual increase in enrollment, an adjustment
as to the number of teachers may be made by the State
Superintendent on approval of said Joint Legislative
Advisory Committee not to exceed the teacher-pupil load
provided herein."

Again, the list and information required of a
school making application for aid, under Section 13 of
the Act, is for the information and guidance of the
Superintendent and the Committee in the matter of
granting aid of any kind under the Act, and presumably
the applicant school disclosing such item of receipts
will not suffer thereby; the proper consideration will
be given to the list and information accompanying the
same by the authorities in such manner as to do full
equity and justice to the applicant school.

This being our construction of the statute,
we beg to advise that it is the opinion of this depart-
ment the Superintendent and Committee did exceed their
authority in directing applicants for aid to omit the
item of receipts of per capita for pupils transferred

in from ineligible districts from their list and application for aid.

Trusting that this will have fully answered your question, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Ocie Speer
Assistant

OS-MR

APPROVED FEB 27, 1940

ATTORNEY GENERAL OF TEXAS


APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN